J-A18043-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| E.H., Jr. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| Y.R. | : | |
| | : | |
| Appellant | : | No. 347 WDA 2020 |

Appeal from the Order Entered February 13, 2020
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-11-008436-009

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.: FILED OCTOBER 15, 2020

Y.R. ("Mother") appeals from the order entered February 13, 2020, in

the Court of Common Pleas of Allegheny County, awarding E.H., Jr. ("Father"),

primary physical custody of the parties' sons, E.H. III, born in April 2004, and

E.H., born in June 2006 (collectively, "the Children"). After careful review, we

affirm.

Mother and Father married in 2003, separated in 2011, and divorced in

2013. N.T., 1/30/20, at 7. Following separation, the parties entered into a

written agreement providing they would share physical custody of the Children

equally. Id. at 20-22. Although the parties had their agreement notarized,

they did not seek to have it entered as an order of court. Id. The parties

shared custody of the Children without court intervention until Father filed a

petition for special relief on August 8, 2017. He averred that Mother enrolled

the Children in a new school during the summer of 2015 without consulting or

informing him, and that Mother was now removing E.H. from that school and enrolling the child in yet another school over his objection. Father requested an order directing that the Children remain in their current school during the upcoming academic year. The court granted the petition that same day.

Subsequently, Father filed a complaint for custody on October 2, 2018, requesting shared legal and primary physical custody of the Children. The trial court entered an order on December 2, 2019, scheduling a hearing on Father's complaint and directing that the parties file pre-trial statements. Father's counsel served Mother with a copy of the order on December 5, 2019. However, Mother did not obtain legal counsel and did not timely file a pre-trial statement.

The trial court began the custody hearing on January 30, 2020. Mother did not appear at the time scheduled for the start of the hearing. The court explained that Mother had contacted its office the previous day and spoken to the court reporter. Id. at 3-4. Mother informed the court reporter that she wanted to continue the hearing to obtain legal counsel and "to go to Alabama where her father is ailing." Id. at 4. She also stated that she "wanted to file something." Id. The court reporter then suggested to Mother that she should appear at the hearing and present her request for a continuance at that time. Id. Father's counsel objected to any continuance and the hearing proceeded in Mother's absence. Id. at 5-6.

The hearing consisted entirely of Father's testimony, which he used to present Mother as irresponsible and derelict in her parental duties. Father

testified that Mother's former employer laid her off in 2009, and that she had not held a full-time job since. N.T., 1/30/20, at 15. According to Father, Mother became preoccupied with becoming a Hollywood producer and often traveled while leaving the Children in his care. Id. at 15-16. After the parties' separation, Mother remained unstable and appeared to struggle financially. Father reported that Mother declared bankruptcy and had been involved in three foreclosure proceedings. Id. at 136-37. He added that Mother receives occasional shut-off notices for her utilities. Id.

More significantly, Father testified that Mother continues to travel, and that she sometimes leaves the Children unattended or with people they do not know. Id. at 112-26, 156. Father recalled that, on one occasion, he asked his sister and niece to check on the Children at Mother's home. Id. at 126. When the sister and niece arrived, at 7:30 or 8:00 p.m., the Children were wearing pajamas and Mother was not present. Id. Moreover, the Children had not eaten since having cereal in the morning. Id. The sister and niece left Mother's home at midnight, and Mother still had not arrived. Id. at 126-27.

Father expressed particular concern that Mother's behavior was harmful to the Children's education. Father testified that the Children are often late to school while in Mother's care and that she is prone to taking them out of school for inadequate reasons. Id. at 60-73. He described one incident during which E.H., III, was punished at school because of his possible cheating on a homework assignment. Id. at 76. Mother had plans to take E.H., III, to Texas

to play in a basketball tournament, but Father insisted that E.H., III, should not get to play as additional punishment for his possible cheating. Id. at 77-79. Mother countered that E.H., III, should go to Texas because a cousin of the Children's maternal grandmother had died, the maternal grandmother was going to Texas, and seeing E.H., III, would lift the maternal grandmother's spirits. Id. at 79. Father contacted the maternal grandmother, who informed him that she was going to North Carolina and not Texas. Id. at 80. When confronted with this information, Mother claimed that she had her weekends "mixed up" and apparently agreed not to take E.H., III, to Texas. Id. at 80-82. The next morning, however, Mother sent Father a text message indicating that she was taking E.H., III, to Texas after all and had already removed him from school. Id.

Finally, Father testified that Mother is uncooperative and interferes with his custody time. He maintained that Mother always appears late for custody exchanges and keeps the Children well past their exchange time without his agreement. Father explained that the designated exchange time is 8:30 p.m. on Sunday, but that Mother has returned the Children to his care as late as midnight when they have to be up for school the next morning. Id. at 22-27. Mother sometimes fails to return the Children entirely and Father contacts her only to discover that she and the Children are "in another state traveling." Id. at 23-24. Similarly, Father testified that he and Mother agreed she could spend three weeks of vacation with the Children during the summer months,

but that Mother often keeps the Children for four or six weeks, and on one occasion kept them "the majority of the summer." Id. at 28-31.

During Father's testimony, the trial court received word that Mother had gone to the wrong location for the hearing. Id. at 44-45. Mother arrived at the correct location near the conclusion of Father's direct examination. Id. at 141. Mother maintained that her initial failure to appear at the correct location was an honest mistake and requested that the court continue the matter so that she could obtain legal counsel. Id. at 142-46. She insisted that she was "discombobulated" due to her parents' serious health issues, which required her to travel out of state. Id. at 145-46. The court denied Mother's request for a continuance but permitted her to cross-examine Father. Id. at 147, 150.

Following the hearing, on February 13, 2020, the trial court entered an opinion and order based on Father's testimony, awarding the parties shared legal custody. The order also awarded primary physical custody to Father and partial physical custody to Mother every other weekend from Friday at 5:00 p.m. to Sunday at 7:00 p.m. during the school year. During the summer, the order awarded the parties shared physical custody, with weekly exchanges on

Sunday at 7:00 p.m. Mother timely filed a notice of appeal on March 5, 2020, along with a concise statement of errors complained of on appeal.[1, 2]

Mother now raises the following claims for our review:

I. Does the trial court abuse its discretion, when it misapplies the factors set forth within 23 Pa.C.S. [§] 5328, thereby rendering the custody award unreasonable?

II. Does the trial court abuse its discretion, when it unreasonably concludes that the record evidence supports a decrease in a mother's custody time?

III. Does the trial court abuse its discretion, when it does not require the petitioner in a custody action to meet his burden of proof?

IV. Does the trial court commit an error of law, when it instructs a pro se litigant to file exceptions to a final order of court?

V. Does the trial court abuse its discretion, when it denies a pro se litigant's timely request for a continuance in order to obtain legal counsel?

_____

[1] In its opinion, the trial court describes the order of February 13, 2020, as an "interim order." Trial Court Opinion ("TCO"), 2/13/20, at 1. However, our review of the record confirms that the court entered the order after completing its hearings on the merits and that it intended the order to constitute a complete resolution of the claims pending between the parties. Accordingly, we conclude that the February 13, 2020 order was final and appealable. See G.B. v. M.M.B., 670 A.2d 714, 720 (Pa. Super. 1996) ("[A] custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties.").

[2] Mother obtained counsel after the hearing. She filed a counseled notice of appeal and remains represented on appeal.

Mother's Brief at 5 (trial court answers omitted).[3]

We consider Mother's claims mindful of our standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

V.B. v. J.E.B., 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." S.W.D. v. S.A.R., 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors that trial courts must consider when awarding custody are set forth at 23 Pa.C.S. § 5328(a), as follows:

_____

[3] In his brief, Father proposes that this Court should dismiss Mother's appeal for noncompliance with our Rules of Appellate Procedure. Father observes that Mother failed to file and serve a designation of the reproduced record pursuant to Pa.R.A.P. 2154(c)(1), and failed to number her reproduced record pursuant to Pa.R.A.P. 2173. Father's Brief at 9-12. While we do not condone Mother's failure to comply with our Rules, the violations Father describes are minor, do not cause him appreciable prejudice, and do not impede appellate review. Thus, they do not warrant dismissal of this appeal. See Reliance Ins. Co. v. IRPC, Inc., 904 A.2d 912, 915 (Pa. Super. 2006), reargument denied (Sept. 6, 2006), appeal denied, 921 A.2d 497 (Pa. 2007) ("[W]e are not persuaded that IRPC's failure to file its designation of reproduced record in a timely fashion will be inherently prejudicial to Travelers Property Casualty Corporation and Travelers Casualty and Surety Company. Hence, the motion to quash is denied.") (citations omitted).

(a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[4]

Mother's first and second claims are interrelated, so we address them together. Mother argues that the trial court abused its discretion in its analysis of the Section 5328(a) factors and by concluding that the evidence supported awarding her only partial physical custody of the Children. Specifically, she challenges the court's findings that Father performs more parental duties; that he is more stable; that he is more likely to maintain a loving, stable, consistent and nurturing relationship with the Children; and that he is more likely to attend to the Children's needs. Mother's Brief at 13-18. Mother also contends that the court failed to consider certain factors that were favorable to her, including her relationship with the Children, and the Children's well-reasoned preferences. Id. at 18-21.

_____

[4] The trial court discussed each of the Section 5328(a) factors in its opinion, but did not address Section 5328(a)(2.1) separately from Section 5328(a)(2), and did not identify any other relevant factor pursuant to Section 5328(a)(16).

We discern no abuse of discretion by the trial court. As summarized above, Father testified at length regarding Mother's chronic instability and irresponsible behavior, including her habit of leaving the Children unattended or with strangers. Father expressed particular concern that Mother's behavior was harmful to the Children's education, in that they were frequently late to school during Mother's custody time or absent for inadequate reasons. Father also testified that Mother was uncooperative with the parties' current custody schedule, in that she always returned the Children to him late and sometimes failed to return them entirely. In light of this evidence, the record supports the court's findings, and we must defer to the court's credibility and weight of the evidence determinations. See V.B., 55 A.3d at 1197.

Mother's argument that the trial court failed to consider certain factors favorable to her in its analysis of Section 5328(a) is also meritless. It is clear that the court considered Mother's relationship with the Children. See, e.g., TCO at 8 ("While there is no evidence that [Mother] does not maintain a loving and nurturing relationship with the [C]hildren, there are issues regarding stability and consistency in her relationship with the [C]hildren."). Moreover, neither party requested that the court interview the Children in order to better discern their preferences.[5] To the extent the record reveals the Children's

_____

[5] Our Rules of Civil Procedure provide that interviews of children in custody actions are optional. See Pa.R.C.P. 1915.11(b) ("The court may interview a child, whether or not the child is the subject of the action, in open court or in chambers. . . .") (emphasis added).

- 10 -

preferences, it suggests that they prefer spending time with Mother because of her lax discipline, and that their preferences are not "well-reasoned." See N.T., 1/30/20, at 88 (Father testifying, "I can remember times when I would put [E.H.] in a punishment in my house. . . . And he would say, 'Hey, can you take me to my mother's early on Sunday?' Because he knew this punishment will be over the minute he gets to her house.").

As a final matter, we note that Mother asserts at several places in her argument that the trial court failed to explain its findings sufficiently. Mother's Brief at 12, 16-18. For example, she complains that the "court concluded that several of the factors delineated within [Section 5328(a)] weighed in favor of Father without articulating the record evidence, if any, that weighed against Mother." Id. at 12. A trial court need not explain its findings pursuant Section 5328(a) in any specific amount of detail. Rather, "all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa. Super. 2013), appeal denied, 68 A.3d 909 (Pa. 2013). In this case, the court made findings regarding the Section 5328(a) factors in its opinion, and based its decision on those findings. We conclude, therefore, that the court conducted an adequate analysis of Section 5328(a), and that Mother's first and second claims fail.

Mother's third claim is that the trial court abused its discretion by not requiring Father to meet his burden of proof. She directs this Court's attention

to precedent indicating that the burden of proof rests on a party requesting modification of an existing custody arrangement. Mother's Brief at 21 (citing Ketterer v. Seifert, 902 A.2d 533, 539 (Pa. Super. 2006)). While Mother acknowledges that this is the parties' first custody proceeding, rather than a modification proceeding regarding a prior order, she insists that the burden of proof rested on Father nonetheless, because he was requesting modification of the parties' informal, written custody agreement. Id. at 22.

This claim does not entitle Mother to relief. As Mother argues, Ketterer states that the burden of proof will rest on the party requesting modification of an existing "custody arrangement[.]" 902 A.2d at 539 (quoting Johns v. Cioci, 865 A.2d 931, 937 (Pa. Super. 2004)). However, this Court has made clear in its other decisions that the language in Ketterer refers to pre-existing custody orders, whether entered to memorialize a formal custody agreement, or following a hearing and best interest analysis by the trial court. See, e.g., M.J.S. v. B.B., 172 A.3d 651, 660 (Pa. Super. 2017) (explaining that the trial court acted improperly by placing the burden of proof on the petitioner, as "there was neither a formal custody arrangement between [the parties], nor a final custody order based upon the requisite best-interests analysis."); Collins v. Collins, 897 A.2d 466, 472 (Pa. Super. 2006), appeal denied, 903 A.2d 1232 (Pa. 2006) ("In the absence of a pre-existing custody order, both parents stand on equal footing, sharing the burden of production and

- 12 -

persuasion."). Because there was no pre-existing order in this case, Ketterer is inapplicable and the burden of proof rested equally on Mother and Father.[6]

Next, Mother contends in her fourth claim that the trial court erred by instructing her that she could file exceptions to the February 13, 2020 order. Mother's claim relates to the court's statement at the conclusion of the hearing that it would issue an order and that she could "[c]ertainly . . . take exceptions to it if you don't think it's an appropriate [o]rder." N.T., 1/30/20, at 163. She maintains that the February 13, 2020 order was a final order, from which she could not file exceptions. Mother's Brief at 22-25. Mother suggests that the court may have relied on its erroneous belief that she could file exceptions as the basis for denying her request for a continuance. Id. at 25.

We agree with Mother that the trial court erred to the extent it instructed her that she could file exceptions. Our Rules of Civil Procedure provide for the filing of exceptions in child custody matters in only very limited circumstances, not present here. See Pa.R.C.P. 1915.4-1; Pa.R.C.P. 1915.4-2 (providing for the filing of exceptions from a hearing officer's report in matters involving partial custody or supervised physical custody where the county has adopted

_____

[6] The trial court did not specify in its opinion which party bore the burden of proof, and it is possible that the court placed the burden solely on Father. Even if the burden did rest on Father, it is clear that he presented sufficient evidence to establish that the court's custody award was in the Children's best interests.

that procedure by local rule).[7]   However, the court's error was harmless and does not warrant reversal of the February 13, 2020 order.   Mother did not attempt to file exceptions and instead timely filed this appeal.   Thus, Mother did not suffer prejudice as a result of the court's mistake.   See J.C. v. K.C., 179 A.3d 1124, 1130 (Pa. Super. 2018) (quoting Harman ex rel. Harman v. Borah, 756 A.2d 1116, 1122 (Pa. 2000)) (to avoid a finding of harmless error, an appellant "'must demonstrate . . . . that he or she has suffered prejudice from the mistake'").

In her fifth claim, Mother argues that the trial court abused its discretion when it denied her request for a continuance.   Mother complains that the court did not afford her additional time to obtain legal counsel and "barely" afforded her time to cross-examine Father.   Mother's Brief at 25.   She contends that the court's decision was a violation of her right to due process.   Id. at 26-28.  Mother characterizes her belated appearance at the hearing as a reasonable mistake and insists that the court denied her a meaningful opportunity to be heard.   Id. at 27-28.

We review a trial court's decision to deny a continuance pursuant to an abuse of discretion standard of review.   In the Interest of D.F., 165 A.3d

_____

[7] While Mother could not file exceptions to the February 13, 2020 order, she could file a motion for reconsideration.   See Pa.R.C.P. 1930.2(b) ("A party aggrieved by the decision of the court may file a motion for reconsideration in accordance with Pa.R.A.P 1701(b)(3).").   Therefore, the court's statement that Mother could file a response to its order was not entirely inaccurate.

960, 964-65 (Pa. Super. 2017), appeal denied, 170 A.3d 991 (Pa. 2017); see also Pa.R.C.P. 216(A)(4) (providing that a trial court may grant a continuance based on "[s]uch special ground as may be allowed in the discretion of the court"). Regarding the due process aspect of Mother's claim, this presents a question of law for which our standard of review is de novo. In the Interest of S.L., 202 A.3d 723, 729 (Pa. Super. 2019). "[P]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. Due process is flexible and calls for such procedural protections as the situation demands." S.T. v. R.W., 192 A.3d 1155, 1161 (Pa. Super. 2018) (internal citations and quotation marks omitted).

We discern no abuse of discretion or error of law by the trial court in denying Mother's continuance request. Father filed his complaint for custody on October 2, 2018, and Mother had over a year to obtain counsel prior to the hearing on January 30, 2020. Tellingly, Mother was able to obtain counsel, who filed this appeal, less than a month after the court entered the subject order. Mother's procrastination and failure to obtain counsel earlier was not a legitimate reason for delaying the resolution of the parties' custody dispute. Moreover, Mother received the court's order specifying the date and time of the hearing by approximately December 5, 2019. Although Mother arrived to the hearing late, the court provided her with the opportunity to cross-examine

Father and placed no limit on her ability to ask questions.[8]  Therefore, Mother received notice, the opportunity to be heard, and a chance to defend herself, and the court did not violate her right to due process.  Mother's fifth and final claim does not entitle her to relief.

Based on the foregoing analysis, we conclude that the trial court did not commit an abuse of its discretion or error of law by awarding Father primary physical custody of the Children.  Accordingly, we affirm the court's February 13, 2020 order.

Order affirmed.

Judge Nichols did not participate in the consideration or decision of this case.

_____

[8] Notably, the trial court did not provide Mother with the opportunity to present any testimony or evidence of her own.  While the court suggests in its opinion that it did provide Mother with such an opportunity, our review of the record belies the court's characterization.  See TCO at 2 ("When asked if there was anything further, [Mother's] only reply was to once again state that she wanted to hire an attorney.").  The record reveals that the court asked Mother if she wanted to hire an attorney, and she responded in the affirmative.  N.T., 1/30/20, at 162.  At no point did the court ask Mother if she had "anything further."  Nonetheless, Mother did not ask the court to present testimony during the hearing, did not claim in her concise statement that the court prevented her from presenting testimony, and does not now assert in her brief that the court prevented her from presenting testimony.  As a result, any claim relating to the court's omission is waived, and we do not address it here.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/15/2020</u>