J-S45001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.S., MOTHER | No. 209 EDA 2019 |

Appeal from the Order Entered December 18, 2018
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): CP-51-DP-0001266-2018

| | |
|---|---|
| IN THE INTEREST OF: N.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.S., MOTHER | No. 211 EDA 2019 |

Appeal from the Order Entered December 18, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001273-2018

BEFORE: BENDER, P.J.E., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED OCTOBER 07, 2019**

T.S. ("Mother") appeals from the orders of disposition entered December 18, 2018, in which the trial court adjudicated her two children, M.M. (born in December of 2011) and N.M. (born in November of 2009) (collectively "Children"), dependent and found child abuse as to M.M. by Mother. We affirm.[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Various procedural issues arose due to Mother's filing of the appeals *pro se*, and submitting *pro se* Pa.R.A.P. 1925(a)(2)(i) and (b) concise statements of errors complained of on appeal, while she was still represented by private counsel, Reginald C. Allen, Esq. Attorney Allen was directed to file Rule

This case began following the filing of dependency petitions for both Children by the Department of Human Services ("DHS"), wherein DHS alleged that Mother perpetrated child abuse on M.M. In its Pa.R.A.P. 1925(a) opinion, the trial court stated that it heard testimony from thirteen witnesses over the course of four hearings that were held on September 17, 2018, October 3, 2018, December 10, 2018, and December 18, 2018. Beginning on page 3 and extending to page 22 of its opinion, the court provided an extensive discussion relating to the testimony of each witness who testified at the hearings. It then provided the following conclusions regarding its determination that Mother was the perpetrator of child abuse as to M.M. and would likely inflict similar abuse on N.M.

> Based upon the credible expert testimony of three (3) doctors this [c]ourt found clear and convincing evidence that Mother's acts of exaggerating medical symptoms to various medical facilities and making misrepresentations to each medial [sic] team[], resulting in an unnecessary full-length hard cast and unnecessary medical procedures wherein M.M. was given anesthesia when it was not medically necessary, was child abuse as to M.M.
>
> Further, Mother's exaggeration of medical symptoms and misinformation to multiple medial [sic] facilities, inflicting child abuse upon M.M., is a valid predictive behavior as creating a potential safety risk for Mother's other Child, N.M. This [c]ourt

1925(b) statements and to respond to a rule to show cause in that dual representation is in contravention of the policy precluding hybrid representation. **See Commonwealth v. Jette**, 23 A.3d 1032, 1036 (Pa. 2011). After Attorney Allen filed a motion to withdraw as counsel, which was granted, the trial court appointed Gary Sanford Server, Esq., to represent Mother. Additionally, Attorney Server complied with this Court's order directing him to file amended Rule 1925(b) statements. We also note that on January 23, 2019, this Court consolidated the two appeals.

found M.M. had suffered child abuse of such nature as would ordinarily not be sustained or exist except for the actions of Mother. Mother's exaggeration of M.M.'s ankle injury, Mother's misinformation of an MRI and fracture diagnosis, Mother's exaggeration of M.M.'s level of constipation and lack of urination, Mother's rejection of lesser invasive forms of treatment, and Mother's March and May 2018 indicated CPS [Child Protective Service] reports, resulted in M.M. receiving potentially harmful medical evaluations and treatments. The credible substantial evidence heard by this [c]ourt established a prima facie case that [] Mother was the perpetrator of the abuse. Mother, as the sole caretaker, is [a fact that is] not in dispute by any party. Regarding the Department's request for a finding of child abuse as to N.M., this [c]ourt did not make a finding of child abuse for N.M. against Mother[,] but addressed its concern that Mother created a reasonable likelihood of bodily injury to N.M. through her actions as N.M. has also on several occasions throughout the years been brought to [the] primary care facility by Mother with medical complaints despite the fact that N.M. appeared well. Therefore, this [c]ourt found clear and convincing evidence that Mother was the perpetrator of the abuse as to M.M.

Trial Court Opinion (TCO), 4/15/19, at 28-29 (unnumbered).

The trial court's opinion also discussed the basis for its conclusion that

Children were dependent, stating:

This [c]ourt heard credible evidence from the DHS Intake Worker, Ms. Iris Pizarro, who noted that she made contact with this family prior to [] Children['s] being removed from Mother in May 2018 and being taken into Protective Custody. She noted that she received a CPS report in March 2018, regarding [] Child, M.M.[,] that M.M. had undergone numerous x-rays with regard to having a fracture that actually wasn't in existence. She stated that when she went to the home to observe [] Children, she saw that both Children had been kept home from school and had been observed to be running around and playing, appearing well. Ms. Pizarro indicated this report after reviewing M.M.'s medical records surrounding the foot injury and speaking with medical personnel. Ms. Pizarro then testified that in May 2018, after having just visited the family five (5) days prior to implement[ing] a safety plan wherein Mother would contact maternal grandfather if she believed [] Children were ill and then escalate to call[ing]

Children's primary [doctor], Dr. Sutherland, before Mother would take either of the Children to a hospital, etc.[,] that Mother[] had taken M.M. to the emergency room for a constipation issue and that Mother was not allowing a lesser [invasive] measure to be performed, insisting on a procedure that involved anesthesia, an [operating room] visit and a manual disempaction of the victim [C]hild M.M. Ms. Pizarro indicated that both [C]hildren appeared fine when she went to see them in Mother's home and that she removed them from Mother's care and indicated this report based upon review of M.M.'s medical records and conversation she had with the medical team. Ms. Pizarro indicated that she removed both Children due to Mother's self-reported mental health history and that the manner in which Mother reports M.M.'s medical issues was equally concerning for N.M. as she feared that neither Child could be safely maintained in Mother's care. This [c]ourt agreed that neither Child could be safely maintained in Mother's care. Specifically, this [c]ourt's finding of clear and convincing evidence that Mother was the perpetrator of child abuse as to M.M. was th[e] basis for this [c]ourt's adjudication of M.M. Furthermore, this [c]ourt determined that the circumstances giving rise to M.M.'s adjudication were so concerning that Mother also created a potential safety risk for N.M. and therefore served as a basis for N.M.'s adjudication.

Therefore, this [c]ourt found that DHS had shown by clear and convincing evidence that in addition to a finding of child abuse against Mother as [] Children were without proper parental care, and that such care was not available immediately due to Mother's mental health. The testimony heard by this [c]ourt was clear, direct, weighty and convincing that [] Children's health, safety and welfare were at risk, and thus [] Children were adjudicated dependent.

*Id.* at 30-31 (unnumbered) (footnote omitted).

On January 10, 2019, Mother filed the *pro se* notices of appeal, and as noted in footnote 1 *supra*, the amended concise statements were filed by Attorney Server on February 27, 2019. Although Attorney Server's amended statements contained five issues based upon those Mother had raised in her *pro se* statements, he explains that following his review of the record and

transcripts of the hearings, prior counsel's file, and the trial court's opinion, dated April 15, 2019, he determined that three of the issues did not have merit and were "tangential to the findings of dependency and child abuse[.]" Mother's brief at 6 (footnote). Therefore, Attorney Server only provides a combined argument in Mother's brief in relation to the following two issues on appeal:

> I. Did the [c]ourt err when it found that there was clear and convincing evidence that Mother was the perpetrator of child abuse as to M.M.?

> II. Did the [c]ourt err when it found that there was clear and convincing evidence that M.M. and N.M. were both dependent due to present inability where the [c]ourt based the adjudications solely upon the perpetration of child abuse as to M.M.?

*Id.*

Mother's argument challenges the sufficiency of the evidence to support the trial court's decision that M.M. was abused by Mother in that Mother exaggerated M.M.'s symptoms relating to M.M.'s gastrointestinal problem and her injured foot, and sought more invasive treatment than was necessary. Moreover, Mother argues that the court further erred in finding that the abuse of M.M. created a potential safety risk for N.M. Specifically, Mother relies on her own witnesses' testimony that she is a caring Mother who could not stand by and watch her daughter suffer. She also relies on medical records and various doctors' testimony as to M.M.'s diagnoses, claiming she did not "fabricate or exaggerate" the doctors' diagnoses. *Id.* at 27. Essentially, Mother claims that she "did what any reasonable, sensitive and protective

- 5 -

parent would do: she questioned the [doctors'] judgment[s] and she made [] recommendation[s] to [the doctors] based on past experience with her child." *Id.* at 28. Mother also argues that because there was insufficient evidence to support any finding as to abuse, the court likewise erred in finding Children dependent in that the court's decision was based on speculation. Lastly, in her brief Mother acknowledges that there are some factual discrepancies for the trial court to resolve, however, she contends that the court's errors rest on its inferences, deductions and conclusions, which are not supported by clear and convincing evidence.

The Pennsylvania Supreme Court sets forth our standard of review of a dependency case, stating:

> Initially, we reiterate that "the standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). We review for abuse of discretion, *id.* ….

> [Moreover,] the applicable version of the CPSL[2] define[s] "child abuse" to include "any recent act or failure to act" which causes "nonaccidental serious physical injury;" "any recent act, failure to act or series of such acts or failures to act" "which creates an imminent risk of serious physical injury;" or "serious physical neglect" "which endangers a child's life or development or impairs the child's functioning." 23 Pa.C.S. § 6303(b)(1)(i), (iii), (iv)…. In turn, the CPSL defined "serious physical injury" as an injury that causes "severe pain" or "significantly impairs" the child's physical functioning temporarily or permanently. *Id.* § 6303(a). While a petitioning party must demonstrate the

_____

[2] Child Protective Services Law, 23 Pa.C.S. §§ 6301 *et seq*.

existence of child abuse by the clear and convincing evidence standard applicable to most dependency determinations, 42 Pa.C.S. § 6341(c) (recognizing clear and convincing evidence as the necessary standard for concluding that a child is dependent), the identity of the abuser need only be established through *prima facie* evidence in certain situations….

*In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015).

For the definition of *prima facie* evidence in the context of a child abuse case, we look to Section 6381 of the CPSL, which provides the following:

**6381. Evidence in court proceedings.**

. . .

**(d) Prima facie evidence of abuse.**—Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S. § 6381(d). Moreover,

> [w]ith regard to dependency cases involving child abuse, the safety of the child is paramount. *In re R.P.*, 957 A.2d 1205 (Pa. Super. 2008). As we have explained,

> [t]he Juvenile Act, 42 Pa.C.S. §§ 6301-65, which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"), 52 U.S.C. § 671 *et seq.*, controls the adjudication and disposition of dependent children. The policy underlying these statutes aims at the prevention of children languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. Furthermore, the 1998 amendments to the Juvenile Act, as required by ASFA, place the focus of dependency proceedings on the child. Safety, permanency, and the well-being of the child must take precedence over all other considerations, including the rights of the parents.

*Id.* at 1217-18 (some internal citations omitted).

***Interest of S.L.***, 202 A.3d 723, 727 (Pa. Super. 2019).

Additionally, we note that the CPSL defines "child abuse" as follows:

**(b.1) Child abuse.—**The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:

. . .

> (2) Fabricating, feigning or intentionally exaggerating or inducing a medical symptom or disease which results in a potentially harmful medical evaluation or treatment to the child through any recent act.

23 Pa.C.S. § 6303(b.1)(2). We also recognize that Section 6303(a) of the CPSL defines bodily injury as "impairment of physical condition or substantial pain." Moreover, "a finding of dependency can be made on the basis of prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent." ***In re R.W.J.***, 826 A.2d 10, 14 (Pa. Super. 2003).

The thrust of Mother's entire argument is that the inferences and conclusions reached by the trial court are not supported by clear and convincing evidence. We disagree. Many of Mother's contentions rest on facts elicited through her testimony and that of her witnesses and that the testimony by the doctors or agency personnel was not credible. However, the trial court found neither Mother nor Mother's psychiatrist, Dr. Frankel, credible. With regard to Dr. Frankel, the court noted:

> Dr. Frankel, by his own admission did not properly perform Mother's psychiatric evaluation in that he missed key aspects of

the assessment which may have confirmed or ruled out Mother having factitious disorder by proxy. Specifically, Dr. Frankel did not speak with either of the Children in question nor did he review any of their medical history outside of what Mother told him, he also did not administer any structured progress tools as a part of the evaluation; and most shockingly, despite being familiar with the DSM-5 criteria for identifying factitious disorder by proxy, he did not take into account the comments of the DSM-5 which indicate that a diagnosis for factitious disorder by proxy could include the exaggerating of symptoms, etc. For these reasons, this [c]ourt discounted Dr. Frankel's entire testimony and could not afford any weight to Dr. Frankel's evaluation.

TCO at 36 (unnumbered).

As for the other three witnesses presented by Mother, the court noted that their testimony was limited in that they expressed that Mother appeared to be a caring parent and was concerned about her children. However, the court stated that "[n]one of [them] were able to testify regarding the medical concerns at hand as they each lacked personal knowledge and had not seen the [C]hildren in several months or several years." ***Id.***

Lastly, the court found Mother's testimony not credible. In support of this finding, the court set forth specific facts upon which it based its credibility determination, stating:

Regarding Mother's own testimony, this [c]ourt did not find Mother to be credible. Mother testified that she carries multiple degrees, including two Masters degrees and has a long history working in fields involving children. Mother also testified to a long-standing history of medical appointments for various ailments for both Children and that for M.M. in particular, her gastroenology [*sic*] needs date back to when she was two (2) months old. Given Mother's high levels of education and hands-on involvement with both Children's extensive medical histories, this [c]ourt did not agree with Mother when she declared that she merely mistakenly told Dr. Sutherland that M.M. had an MRI completed by Dr. Gross which showed a fracture. Moreover, for Mother to have been so

concerned that M.M. had a fracture that was still [] pain[ful,] to take M.M. to Dr. Sutherland after having already been evaluated twice, this [c]ourt found it odd that Mother did not feel like getting [Children's Hospital of Philadelphia (CHOP)] to conduct what would have been CHOP's second x-ray of M.M. as Mother "didn't feel like" driving from Dr. Sutherland's office in West Philadelphia to CHOP, which is also located in West Philadelphia. Instead, Mother avoided CHOP altogether and went to Dr. Gross, outside of the CHOP network, perhaps on purpose. This [c]ourt also did not find credible Mother's testimony that nobody told her that M.M. had passed stool during the overnight stay at CHOP ER as Dr. Grossman specifically asked Mother if he could try another enema before giving M.M. anesthesia to verify whether or not M.M. passed stool overnight. Dr. Grossman recounted that Mother declined this less-invasive procedure when he made the request[,] which suggests that Mother did in fact gain knowledge that M.M. may have passed stool overnight.

*Id.* at 37-38 (unnumbered).

After a careful review of the extensive record in this case, we conclude that the trial court's credibility determinations are supported by competent evidence. Moreover, our Supreme Court has directed that "we are not in a position to make the close calls based on fact-specific determinations." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). "Not only are our trial judges observing the parties during the hearing, but usually, … they have presided over several other hearings with the same parties and have a longitudinal understanding of the case and best interests of the child[ren] involved. Thus, we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness…." *Id.* Consequently, based on those credibility determinations, the trial court's evaluation of its findings provided the basis for the reasoning underlying its conclusions as to its dependency orders. Additionally, Mother has failed to convince this Court that the trial

court abused its discretion in this regard and as to its conclusion that Mother abused M.M.  We, therefore, affirm the trial court's orders.

Orders affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/19