J-S04018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.K., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.G., FATHER | : : : : : : : | |
| | : | No. 2093 EDA 2021 |

Appeal from the Order Entered October 13, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-DP-0000667-2021

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 07, 2022**

N.G. (Father) appeals from the order adjudicating his son, N.K. (Child), dependent, and determining that Child was a victim of child abuse as defined in 23 Pa.C.S.A. § 6303(b.1).  Upon review, we affirm.

On June 24, 2021, the Philadelphia Department of Human Services (DHS) received a Child Protective Services (CPS) report about Father shaking and striking Child, who was ten-months-old at the time.[1]  N.T., 10/13/21, at 10.  Upon investigation, Child's mother, A.K. (Mother), confirmed to the DHS social worker that she saw "Father shake [C]hild's face in a forceful manner and also str[ike] [C]hild with an opened hand."  *Id.* at 12.  Mother stated the

_____

* Former Justice specially assigned to the Superior Court.

[1] Child was born in August 2020.

reason Father "did that was because [Child] . . . tossed one of his bottles towards the . . . TV in the family home." *Id.* at 12. Mother also stated that the force Father used in striking Child "was hard enough that she had to contact the police." *Id.* DHS categorized the CPS report as indicated.[2] *Id.* at 18-19.

Father was arrested and charged with, *inter alia*, simple assault and endangering the welfare of a child; the charges were pending at the time of the adjudication hearing. *Id.* at 13-14. The court issued a stay-away order against Father with respect to Mother and Child. *Id.* at 14-15.

DHS initially established a safety plan requiring Mother and Child to reside in the home of Child's maternal grandmother. *Id.* at 16. On June 30, 2021, the trial court issued an order of protective custody due to DHS's understanding that Mother intended to return to living with Father, who had been released from prison. Trial Court Opinion, 11/9/21, at 3; N.T. 10/13/21, at 16. Following a hearing on July 2, 2021, the court placed Child in shelter care.

On July 8, 2021, DHS filed a dependency petition alleging Child was dependent and/or abused pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6302 ("Dependent Child" is without proper care or control) and/or the Child

---

[2] Although the report alleged that Child did not require medical treatment, DHS "indicated" two of the three allegations in the report: 1) Father forcibly striking a child under the age of one, and 2) forcibly shaking a child under the age of one. N.T., 10/13/21, at 19-20.

Protective Services Law (CPSL), 23 Pa.C.S.A. § 6303(b.1) (defining "Child Abuse"). Another hearing occurred on October 13, 2021, where Child, then nearly 14 months old, was represented by a Child Advocate. DHS presented testimony of its social worker, John Paffen, and the Community Umbrella Agency (CUA) caseworker, Eric Hawkins. Father and Mother, who were represented by separate counsel, testified on their own behalf.

At the conclusion of testimony, the trial court adjudicated Child dependent. In addition, the court found Child to be a victim of child abuse and ordered that the CPS report be converted from indicated to founded. N.T., 10/13/21, at 55-60. By order dated and entered on October 13, 2021, the court memorialized its findings.

On October 14, 2021, Father filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3] Father asserted that the court erred in finding him to be a perpetrator of child abuse, and in converting the CPS report from indicated to founded. Father did not challenge the court's adjudication of dependency. The court filed an opinion pursuant to Pa.R.A.P. 1925(a) on November 9, 2021.

On appeal, Father presents the two issues he raised in his Rule 1925(b) concise statement:

---

[3] Mother did not appeal.

> 1) Whether the trial court erred as a matter of law and abused its discretion when it found [Father] was the perpetrator of child abuse against [Child]?
>
> 2) Whether the trial court erred as a matter of law and abused its discretion when it found that the report of abuse against [Father], listed as a CY-48, should be converted to a CY-49?

Father's Brief at 3.[4]

Our standard of review in dependency cases "requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion." **In the Interest of X.P.**, 248 A.3d 1274, 1276 (Pa. Super. 2021) (citation omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **Id.** (citation omitted).

This Court has explained:

"[Although] dependency proceedings are governed by the Juvenile Act (Act), . . . the CPSL . . . controls determinations regarding findings of child abuse, which the juvenile courts must find by clear and convincing evidence." **In re L.V.**, 209 A.3d 399, 417 (Pa. Super 2019) (citations omitted); **see also In the Interest of X.P.**, 248 A.3d 1274, 1276 (Pa. Super. 2021) (same). The CPSL "does not provide for legal determinations of abuse; it is mainly a vehicle for reporting abuse and bringing quickly into play those services (including court hearings) available through county protective service facilities for the care of the child." **In the**

---

[4] The Child Advocate filed an appellate brief advocating for affirmance of the court's adjudication and disposition.

*Interest of J.R.W.*, 631 A.2d 1019, 1022 (Pa. Super. 1993). "[T]he Act and the [CPSL] must be applied together in the resolution of child abuse complaints under the [CPSL and] reference must be made to the definition sections of both the Law and the [CPSL] to determine how that finding [of child abuse] is interrelated." *Id.* at 1023.

"'As part of [a] dependency adjudication, a court may find a parent [or caregiver] to be the perpetrator of child abuse[]' as defined by the . . . CPSL." *In re S.L.*, 202 A.3d 723, 728 (Pa. Super. 2019) (citation and quotations omitted). Section 6381 of the CPSL, which governs evidence in court proceedings, states that "[i]n addition to the rules of evidence . . . relating to juvenile matters, the rules of evidence in this section **shall govern** in child abuse proceedings in court[.]" 23 Pa.C.S. § 6381(a) (emphasis added). . . .

In *In the Interest of N.B.-A.*, 224 A.3d 661 (Pa. 2020), the Pennsylvania Supreme Court recently reiterated the appropriate standard of proof for a finding of child abuse:

> The requisite standard of proof for a finding of child abuse pursuant to [s]ection 6303(b.1) of the CPSL is clear and convincing evidence. [A] petitioning party must demonstrate the existence of child abuse by the clear and convincing evidence standard applicable to most dependency determinations, 42 Pa.C.S. § 6341(c)[]. Clear and convincing evidence is "evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." . . .

*Id.* at 668 (citations omitted).

"The purpose of the CPSL is to bring about quick and effective reporting of suspected child abuse so as to serve as a means for providing protective services competently and to prevent further abuse of the children while providing rehabilitative services for them and the parents." *J.R.W.*, *supra* at 1021, citing 23 Pa.C.S. § 6302(b). The CPSL "was created primarily for reporting suspected child abuse, providing the means for doing so[,] and establishing the persons responsible for reporting the abuse[.]" *Id. See also* 23 Pa.C.S. §§ 6311-6320.

***In the Interest of C.B.***, ___ A.3d ___, ___, 2021 Pa. Super. LEXIS 595, *14-17 (Pa. Super. 9/23/21) (*en banc*) (footnotes omitted) (emphasis omitted).

The relevant provisions of Section 6303(b.1) of the CPSL are as follows.

> **(b.1) Child abuse**.— The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> . . .
>
>> **(8)** Engaging in any of the following recent acts:
>>
>> . . .
>>
>>> **(iii)** Forcefully shaking a child under one year of age.
>>>
>>> **(iv)** Forcefully slapping or otherwise striking a child under one year of age.

23 Pa.C.S.A. § 6303(b.1)(8)(iii)-(iv).

Section 6303(d) provides, "The term 'child abuse' does not include any conduct for which an exclusion is provided in section 6304 (relating to exclusions from child abuse)." 23 Pa.C.S.A. § 6303(d) (Child abuse exclusions). Section 6304 states:

> **(d) *Rights of parents.* —** Nothing in this chapter shall be construed to restrict the generally recognized existing rights of parents to use reasonable force on or against their children for the purposes of supervision, control and discipline of their children. Such reasonable force shall not constitute child abuse.

23 Pa.C.S.A. § 6304(d).

On appeal, Father contends for the first time that "the contact he had with Child was for the purpose of supervision, control, and discipline." Father's

Brief at 11. Thus, he argues his actions did not constitute "child abuse" under Section 6304(d) of the CPSL, but rather, reasonable force in disciplining Child. *Id.* at 21-24. Father asserts the court erred in not considering Section 6304(d), despite referencing Mother's testimony that she called police in response to Father's physical discipline of Child, as well as Mr. Paffen's testimony that Father asserted his right to physically discipline his children.[5] *Id.* at 15; Trial Court Opinion, 11/9/21, at 7 (citations to record omitted). Notably, our review reveals Father unequivocally denied having physical contact with Child.[6] N.T., 10/13/21, at 42-44. We further conclude Father did not raise Section 6304(d) as a defense.

---

[5] Father and Mother have another child, approximately a year older than Child. N.T., 10/13/21, at 5. The older child is not involved in this appeal.

[6] Father stated that he and Mother had an argument. N.T., 10/13/21, at 42. He then testified on direct examination:

Q. And during that argument, did you ever strike your child?
A. No, I haven't.

Q. And did you ever shake your child?
A. No, I haven't.

*Id.* Father further denied ever striking or hitting his children:

Q. Have you ever struck a child in your life?
A. No, I didn't.

Q. Do you have any other children?
A. Yes, I do.

*(Footnote Continued Next Page)*

This Court has explained:

Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). In **Jahanshahi v. Centura Development Co., Inc.**, 816 A.2d 1179 (Pa. Super. 2003), we noted that our Supreme Court has frequently stressed the necessity of raising claims at the earliest opportunity to "eliminate the possibility that an appellate court will be required to expend time and energy reviewing claims on which **no trial ruling has been made**." **Id.** at 1189 (emphasis in original) (citation omitted). More recently, we clarified:

> On appeal, we will not consider assignments of error that were not brought to the tribunal's attention **at a time at which the error could have been corrected** or the alleged prejudice could have been mitigated. **Tindall v. Friedman**, 970 A.2d 1159, 1174 (Pa. Super. 2009). "In this jurisdiction one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." **Id.** (quoting **Thompson v. Thompson**, 963 A.2d 474, 475-76 (Pa. Super. 2008) (citation omitted)).

**State Farm Mutual v. Dill**, 108 A.3d 882, 885 (Pa. Super. 2015) (*en banc*) (emphasis added).

**In re T.M.**, 239 A.3d 193, 201 (Pa. Super. 2020).

Father did not raise the Section 6304(d) "control and discipline" issue in his Rule 1925(b) concise statement. As a result, the court did not address it in its Rule 1925(a) opinion. Accordingly, Father has waived his argument that the court erred in failing to consider Section 6304(d) in making its "child

---

Q. Have you ever hit them?
A. No, I haven't.

**Id.** at 43.

abuse" determination. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]t is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived.").

Father additionally disputes three findings by the court as being unsupported by the evidence. He asserts the court's findings "help form a narrative which becomes the lens through which the trial court both views and presents this case." Father's Brief at 26-29. Father describes the narrative as "a man who drunkenly beat his child repeatedly, leaving multiple scratches all over his face and ear, this coming from a man who previously choked Mother unconscious." *Id.* at 29; Trial Court Opinion, 11/9/21, at 1-2 (trial court found "Father also admitted to drinking alcohol at the time of the reported incident"; the CPS report alleged Father hit "Child several times, causing scratches on the right side of his face and left ear"; "Mother stated there had been domestic violence between her and Father, including an incident in January 2021 where Father hit and choked Mother into unconsciousness.").

The record reveals that the disputed findings appear as allegations in the dependency petition, for which no evidence was presented at the hearing. Therefore, Father is correct that these findings are not supported by the record. Nonetheless, DHS asserts, "the disputed findings of fact are not material to the abuse finding[;] they need not be considered on appeal, and

the abuse finding may be affirmed without reference to them." DHS's Brief at 11 (citing *In re C.B.*, 264 A.3d 761 (Pa. Super. 2021) (*en banc*)). We agree.

The court's determination of child abuse pursuant to Section 6303(b.1)(8)(iii)-(iv) is supported by the evidence. As the court explained:

> The DHS Social Worker testified that during his investigation of the CPS report received around June 24, 2021, Mother confirmed that she witnessed Father shake and strike Child's face with an open hand, in a forceful manner. (N.T., 10/12/21, [at] 12). Child was under one year of age, only ten-months-old at the time. (N.T., 10/12/21, [at] 10). DHS came to investigate the report approximately eight hours after the incident was reported. (N.T., 10/12/21, [at] 19-20). . . . DHS observed a scratch on the right side of Child's face. (N.T., 10/12/21, [at] 20, 22). . . . Mother reported to DHS that Father had grabbed Child's face by both cheeks and shook his head. (N.T., 10/12/21, [at] 24). The DHS Worker demonstrated the action at the bar of the court. ([*Id.*]). The observed scratch corresponded with the location Mother observed Father grabbing Child's face. (N.T., 10/12/21, [at] 25).

Trial Court Opinion, 11/9/21, at 6-7.

Mr. Paffen testified that Mother "specifically said that [Father] grabbed [Child's] face by his two cheeks and shook his head in this manner." *Id.* at 24. The court stated, "Let the record reflect the witness is actually grabbing his face at the chin and shaking it back and forth." *Id.* Importantly, Section 6303(b.1)(8)(iii)-(iv) does not require that Child suffer injury. Here, Mr. Paffen's testimony that he observed a scratch on the right side of Child's face corroborated Mother's allegation that Father shook Child's head. N.T., 10/13/21, at 25 (Mr. Paffen affirming the scratch on Child's face was in the area where Mother described Father holding Child's face as he was shaking it.).

In addition, the following testimony by Mr. Paffen corroborated Mother's allegation that Father's conduct resulted from Child throwing his bottle at the television.

> [Father] . . . didn't deny or he didn't admit to the incident; however, he did pretty boldly state that he . . . is able to discipline his children however he sees fit.
>
> I had another conversation with him about the age and vulnerability of his children, and he still had said that it was his right to discipline his children how he wanted to discipline his children, which was obviously a concerning statement for us.

N.T., 10/13/21, at 17-18. Mr. Paffen confirmed:

> Q. So did Father admit to physically disciplining [Child] on June 24?
>
> A. He didn't admit it outright.

*Id.* at 18.

Father testified with respect to his conversation with Mr. Paffen, "I said that . . . I can pop my older children on their hand[.] [T]that's what I was referring to when I was conversating [*sic*] with him. . . . But not about this (unintelligible)." *Id.* at 44.

Based on the foregoing, we discern no abuse of discretion by the court in finding Father's conduct of shaking and striking Child constituted child abuse under Section 6303(b.1)(8)(iii)-(iv). Father's first issue does not merit relief.

It thus follows that Father is not entitled to relief on his second issue, in which he asserts the court erred in ordering that the CPS report be converted, or amended, from "indicated" to "founded." Father accurately states, "a report is founded where 'there has been a judicial adjudication based on

finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse.'" Father's Brief at 32 (citing ***J.F. v. Department of Human Services***, 245 A.3d 658, 660 (Pa. 2021)). The Pennsylvania Supreme Court in ***J.F.*** explained:

> A report is "founded" as a result of a determination or disposition made by a judicial authority, external to DHS, but in reliance on the same factual circumstances involved in the allegation of child abuse. [23 Pa.C.S.A. § 6303(a)] (definition of "founded report"). The CPSL provides the following exhaustive list of situations in which a disposition external to DHS may serve as a basis for a founded report:
>
> > (1) There has been a judicial adjudication based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse. The judicial adjudication may include any of the following:
> >
> > . . .
> >
> > (iii) A finding of dependency under 42 Pa.C.S. §6341 (relating to adjudication) if the court has entered a finding that a child who is the subject of the report has been abused.

***J.F.***, ***supra***.

In this case, the court adjudicated Child dependent based on the substantiated facts of the child abuse in the CPS report, and thus acted properly when it ordered that the report be amended from "indicated" to "founded." Accordingly, we affirm the order of adjudication and disposition.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 3/7/2022*