J-S61016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3384 EDA 2017 |

Appeal from the Order Entered September 20, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0000421-2017,
FID: 51-FN-000411-2017

BEFORE:  BENDER, P.J.E., BOWES, J., and PANELLA, J.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 04, 2018**

J.B. ("Mother") appeals from the trial court's order entered on September 20, 2017, finding aggravated circumstances against her as to her minor daughter, S.L., born in November 2016, on the basis that she had committed child abuse.[1]  Following our review of the certified record and relevant case law, we vacate the findings of aggravated circumstances and child abuse, and remand for a new hearing.[2]

On February 14, 2017, the Department of Human Services ("DHS") received a child protective services ("CPS") report that Mother arrived at the

---

[1] The trial court also found that S.L.'s father, E.L., committed child abuse against S.L. and that aggravated circumstances existed.  He did not appeal.

[2]  S.L.'s "Motion to Substitute Exhibit" is granted.  The Prothonotary is directed to substitute the redacted "Exhibit A" that the *guardian ad litem* appended to the present motion for the exhibit that is attached to the brief filed on August 27, 2018.

Children's Hospital of Philadelphia ("CHOP") Emergency Room ("ER") with three-month old S.L. Mother informed Kristine Fortin, MD., the attending physician, that she first noticed a cracking sound in S.L.'s back during the week of February 6, 2017, and by February 12, 2017, the child became agitated and would only sleep on her side. Mother indicated that S.L. had not fallen or experienced other trauma. Subsequent tests revealed that S.L. had suffered six fractured ribs, consisting of twelve distinct bone fractures in various stages of healing, and a fresh fracture on her right proximal tibia (shin). S.L. was admitted to the hospital in stable condition. CHOP staff determined that the injuries were non-accidental in nature, but neither Mother nor and her then-live-in paramour, E.L. ("Father"), could explain how they had occurred.

DHS visited Mother, Father, and Maternal Grandparents at CHOP the next day. Both parents denied harming S.L. Likewise, Mother and Father met with the CHOP child protection team to review their family history and discuss the manner of the injury. Again, neither parent professed any knowledge of the injury during that meeting. However, Mother initiated a private conversation with Dr. Fortin and informed her that she was "concerned about Father's reactions and behaviors" following the discovery of their daughter's injuries. N.T., 7/19/17, at 33. Specifically, she reported that Father suggested, "why don't we just blame it on the family dog." *Id*. at 33. She also described Father's opposition with her decision to take the child to the hospital. In this vein, Mother contacted the hospital and requested that it not

permit Father to visit the child. Likewise, even though Mother initially denied domestic violence in the home, during a subsequent interview with a DHS investigator, she indicated that verbal abuse had, in fact, occurred in the home, and she stated her intention to terminate her relationship with Father and move from the family residence.

The resulting CPS report was indicated for physical abuse, and Mother and Father were identified as perpetrators. On February 17, 2017, DHS obtained an order for protective custody ("OPC"). S.L. was placed in kinship care with a family friend; however, after Mother violated the placement order by visiting S.L. in the kinship home, the court placed the child with a foster family.

On February 28, 2017, DHS filed a dependency petition, which requested a determination whether aggravated circumstances existed as to S.L. and whether reasonable efforts need be made towards reunification. On March 1, 2017, the juvenile court adjudicated S.L. dependent. Contested permanency review hearings were held on July 19, 2017 and September 20, 2017 to determine whether child abuse had occurred. Dr. Fortin and Danielle Nesmith, the DHS social worker who investigated the CPS report, both testified at the hearing. As it relates to the central issue Mother raises in this appeal, we observe that Ms. Nesmith recounted Mother's concern over Father's suggestion that they blame the dog for their daughter's injuries, Father's opposition to bringing the child to the hospital, and the ruse that Mother employed to avoid Father's interference. N.T., 9/20/17, at 25-27. Likewise,

Ms. Nesmith summarized Mother's efforts to have Father barred from unsupervised contact with S.L. at the hospital, and she confirmed that, while Mother denied domestic violence in the home, during a subsequent investigation with another case worker, she alleged verbal abuse. *Id*. at 29-31. Mother's counsel and the Child Advocate both revisited these aspects of Ms. Nesmith's testimony during cross-examination. *Id*. at 41-44, 48-51.

After DHS completed its case, the trial court denied Mother's attempt to present the testimony of several witness, including Dr. Reinhold, the court-appointed psychologist. As it relates to Dr. Reinhold's psychological evaluation report, Mother argued, "it's detailed conversations with the doctor [who] is going to be coming in and testifying as to [what] [either] parent believed or didn't believe as to how the child got injured." *Id*. at 61. The trial court rejected Mother's entreaty, finding that neither Dr. Reinhold's observations nor the court-ordered report were germane to the child abuse hearing. *Id*. 62. Accordingly, Mother did not present any independent evidence to rebut the presumption that she was a perpetrator of abuse.

At the conclusion of the hearing, the court made a finding of child abuse and held that aggravated circumstances existed as to both parents. It relieved DHS of the need to make additional efforts to reunify S.L. with Mother. The court did not hold a permanency review hearing, nor did it schedule a permanency review hearing within thirty days.

On October 10, 2017, Mother filed a motion for reconsideration. Before the court entered an order on the motion, Mother timely appealed and filed a

concise statement of errors complained of on appeal. *See* Pa.R.A.P.

1925(a)(2)(i); Pa.R.A.P. 1925(b). She raises the following issues, which we

re-order for ease of disposition.

> 1. Did the trial court err and/or abuse its discretion by denying Mother's [c]ounsel an opportunity to call witnesses, ruling that their testimony was irrelevant?
>
> 2. Was the evidence insufficient for the trial court to find, by clear and convincing evidence, [a]ggravated [c]ircumstances with no efforts to reunify [S.L.] with the Mother[?]
>
> 3. Did the trial court violate Mother's rights to due process by not allowing Mother's counsel to call witnesses in her defense of the child abuse allegations?
>
> 4. Did the trial court err in not ordering a permanency hearing within 30 days of the hearing where the court made a finding of [a]ggravated [c]ircumstances with a finding of no efforts to reunify [S.L.] with the Mother[?]

Mother's brief at 4 (trial court answers omitted).[3]

> Our standard of review is as follows:
>
> The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

In pertinent part, the Juvenile Act describes the relevant aspect of

aggravated circumstances as a situation where "The child or another child of

---

[3] While DHS declined to file a brief, the *guardian ad litem* filed a brief in support of the trial court order.

the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent." 42 Pa.C.S. § 6302.

With regard to dependency cases involving child abuse, the safety of the child is paramount. ***In re R.P.***, 957 A.2d 1205 (Pa.Super. 2008). As we have explained,

> The Juvenile Act, 42 Pa.C.S. §§ 6301–65, which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"), 42 U.S.C. § 671 *et seq.*, controls the adjudication and disposition of dependent children. The policy underlying these statutes aims at the prevention of children languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. Furthermore, the 1998 amendments to the Juvenile Act, as required by ASFA, place the focus of dependency proceedings on the child. Safety, permanency, and the well-being of the child must take precedence over all other considerations, including the rights of the parents.

***Id***. at 1217–18 (some internal citations omitted).

In the instant case, the court made two determinations: first, that Mother was the perpetrator of child abuse, and second, that aggravated circumstances existed as to S.L. "As part of [a] dependency adjudication, a court may find a parent to be the perpetrator of child abuse," as defined by the Child Protective Services Law ("CPSL"). ***In re L.Z.***, 111 A.3d 1164, 1176 (Pa. 2015).

> In cases of child abuse, a court's finding as to the identity of the abusers need only be established by prima facie evidence that the abuse normally would not have occurred except by reason of acts or omissions of the caretakers.

***R.P.***, ***supra*** at 1217–18 (Pa.Super. 2008) (some internal citations omitted).

As it is pertinent to this case, the CPSL defines "child abuse" as follows:

**(b.1) Child abuse.--**The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:

(1) Causing bodily injury to a child through any recent act or failure to act.

. . . .

23 Pa.C.S. § 6303(b.1) (1). Furthermore, § 6303(a) defines bodily injury as "impairment of physical condition or substantial pain."

In situations where a perpetrator of abuse is unknown, a parent's culpability may be established by *prima facie* evidence pursuant to § 6381(d),

Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S. § 6381(d).

With regard to the application of the rebuttable presumption provided for by the statute, the Pennsylvania Supreme Court observed:

the Legislature balanced the presumption of Section 6381(d) by making it rebuttable as it merely establishes "prima facie evidence" that the parent perpetrated the abuse. 23 Pa.C.S. § 6381(d). As commonly understood, *prima facie* evidence is "[s]uch evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient." Black's Law Dictionary 825 (6th ed. abridged 1991). Accordingly, evidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the

presumption. **The parent or responsible person may present evidence demonstrating that they did not inflict the abuse**, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. **The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person**.

*L.Z.*, *supra* at 1185 (emphases added). In examining the rebuttable presumption in *L.Z.*, the High Court invoked a Commonwealth Court case which stated that the presumption established in Section 6381(d) "can be rebutted, like other statutory presumptions, with countervailing competent, substantial evidence." *Id*. at 1180 (quoting *J.B. v. Department of Public Welfare*, 898 A.2d 1225-26 (Pa.Cmwlth. 2006)). Hence, it is now clear that, once the agency presents *prima facie* evidence of abuse, a parent or caregiver presumed to have perpetrated abuse is entitled to present evidence to rebut that presumption. Thereafter, based upon the countervailing evidence, the trial court must determine whether the presumption is valid. With these principles in mind, we turn to Mother's brief.[4]

First, Mother contends that the court erred in denying her the opportunity to present evidence and testimony to rebut the *prima facie* evidence that she was the perpetrator of child abuse, namely, the testimony of the court-appointed psychologist who evaluated Mother's mental health.

---

[4] Based upon our resolution of the first issue, we do not address Mother's remaining issues.

Mother's brief at 11-13. Mother argues that this evidence was necessary to rebut the presumption that, as a custodian, she was responsible for S.L.'s injuries.[5] *Id*.

As noted, the trial court barred the prospective witness's testimony. The trial court reasoned that the evidence was unnecessary in the context of the child abuse hearing. N.T., 9/20/17, at 55-56. Mother's counsel argued that the testimony of Dr. Reinhold and the current caseworker, in particular, would be important for credibility determinations, where one parent might be more credible than the other, and what the parent did or did not believe as to how S.L. was injured. *Id*. at 59. Ultimately, the court prohibited the testimony as being irrelevant to the case at "this time." *Id*. at 62. We disagree with the trial court's characterization of the evidence as facially irrelevant.

Our review is guided by the following principles. One of the stated purposes of the Juvenile Act is to ensure due process. *See* 42 Pa.C.S. § 6301(b)(4) ("[t]o provide means through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced."). "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." ***Commonwealth v. Tejada***, 161 A.3d 313, 317 (Pa.Super. 2017).

---

[5] Mother does not dispute the nature and severity of S.L.'s injuries. N.T., 9/20/17, at 15-16. Instead, she argues that she was entitled to present evidence to rebut the presumption that she was the perpetrator of abuse. Mother's brief at 10.

"Due process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues." *Brooks−Gall v. Gall*, 840 A.2d 993, 997 (Pa.Super. 2003) (recognizing that dependency proceedings implicate due process concerns). It is well settled that "procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *S.T. v. R.W.*, 192 A.3d 1155, 1161 (Pa.Super. 2018). Significantly, the in-court presentation of evidence is a fundamental component of due process. *M.O. v. F.W.*, 42 A.3d 1068, 1072 (Pa.Super. 2012). "[I]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Id*. at 1072.

Instantly, DHS established the threshold presumption of abuse pursuant to § 6381(d). Namely, S.L. suffered non-accidental injuries, Mother was among the adults responsible for the child when the injuries occurred, and she denied knowing how S.L. was injured. Accordingly, the certified record contained *prima facie* evidence that S.L. suffered an injury that would not be ordinarily sustained but for the acts or omissions of the parents or responsible persons. *L.Z.*, *supra* at 1185. However, the trial court's finding of *prima facie* evidence against Mother did not end the analysis.

Pursuant to the High Court's discussion in *L.Z.*, due process dictates that Mother was entitled to present testimony "demonstrating that [she] did not inflict the abuse." *Id*. Mother attempted to introduce the testimony of the

- 10 -

court-appointed psychologist in an effort to deflect her culpability for the physical abuse her daughter suffered; however, the trial court summarily rejected that evidence as irrelevant. That ruling was erroneous.

Relevant evidence has a "tendency to make a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Pa.R.E. 401(a) and (b). Instantly, the psychologist's report and testimony regarding Mother's psychological profile and behavioral health was relevant in determining Mother's culpability and in rebutting the presumption that she perpetrated child abuse. That is, the evidence has a tendency to make a finding of Mother's responsibility for her daughter's injuries more or less probable than it would be without it. At a minimum, Dr. Reinhold's testimony would have corroborated the competent evidence in the record that established that Mother had suspected that Father was the perpetrator of abuse since the day that she brought S.L. to the emergency room.

Whether or not Mother's rebuttal evidence is credible or persuasive is within the trial court's ultimate purview. *Id.* However, in order to satisfy due process, Mother was entitled to present her evidence to rebut the presumption that she was the perpetrator of child abuse, and have the trial court make its ultimate determination **based upon the countervailing evidence**. *L.Z.*, *supra* at 1180; *M.O.*, *supra* at 1072. Mother was denied this opportunity. Accordingly, we vacate the trial court order entered September 20, 2017, and remand for a new hearing, wherein Mother is permitted to present competent

evidence to rebut the § 6318(d) presumption that she perpetrated child abuse in accordance with our High Court's discussion in *L.Z.* Thereafter, the trial court will review the countervailing evidence and evaluate the validity of the statutory presumption.

Order vacated. Case remanded. Jurisdiction relinquished.
Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/18