J-A20046-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: PHILADELPHIA | : | |
| DEPARTMENT OF HUMAN SERVICES | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 154 EDA 2025 |

Appeal from the Order Entered December 19, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000683-2024

BEFORE: MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED AUGUST 22, 2025**

The Philadelphia Department of Human Services (DHS) appeals from the order, entered in the Court of Common Pleas of Philadelphia County Juvenile Division, which adjudicated J.L. (Child) dependent, but declined to find parental abuse. DHS claims the court erroneously failed to: (1) apply the evidentiary presumption rule located at 23 Pa.C.S. § 6381(d) to S.L. (Father) in connection with alleged abuse of Child, which was unrebutted and therefore required a finding of child abuse by Father; and (2) find aggravated circumstances under 42 Pa.C.S. § 6302(2), where Child was intubated to save his life due to injuries he sustained. After careful review, we agree with DHS and reverse and remand to the trial court for entry of a finding of child abuse

_____

[*] Retired Senior Judge assigned to the Superior Court.

by Father, for entry of a finding of aggravated circumstances, and for further proceedings.

The pertinent facts of this case are as follows. On June 19, 2024, Child, who was about four weeks old, was healthy and behaved without any reported abnormality, from when he awoke at 7 a.m. and took a bottle without issue, until 10 or 11 that morning, at which point Father noted that Child did not take the bottle as he usually did. Instead, Child's eyes twitched, and Child cried, was fussy, and vomited. As Child began to exhibit this unusual behavior, Father left Child in the care of Paternal Grandmother—with whom he lived, along with Child and Paternal Great Grandparents[1]—to attend a prior-scheduled job interview. Once Father returned home later that day, Paternal Grandmother informed Father that Child's condition did not improve throughout the day and his vomiting had persisted.

Sometime that evening, Father, along with other family members, brought Child to St. Christopher's Hospital in Philadelphia. Observation and testing at the hospital revealed that Child was suffering from uncontrolled seizures and had bruising to his deep brain tissue and his penis. Doctor Norell Atkinson, M.D., a child abuse pediatrician and director of the child protection

---

[1] The record, and especially the notes of testimony, are unclear as to who lived in the house with Child and Father at the relevant times—and what their relation to Child was—but all agreed there were four related adults living in the house with Child. **See** N.T. Dependency Hearing, 12/19/24, at 4, 8, 45-47. In any event, the record is clear that Child's brain injuries first presented while Child was in Father's care and his penis injury was only discovered at the hospital.

program at St. Chistopher's Hospital, evaluated Child the following day. Doctor Atkinson, who was qualified at the dependency hearing as an expert in pediatric child abuse, ruled out all potential alternative causes[2] of each injury to a reasonable degree of medical certainty, except for theories related to human-inflicted abusive trauma. **See** N.T. Dependency Hearing, 12/19/24, at 16-18, 25. Doctor Atkinson noted that Child's brain injuries could have resulted in death if Child were not intubated at the hospital due to Child's difficulty breathing. **See id.** at 36.

At the conclusion of a December 19, 2024 dependency hearing, the court adjudicated Child dependent but found that Father did not commit child

---

[2] Doctor Atkinson specifically ruled out: (1) Father's explanations that: (a) Child's mother caused the injuries, either indirectly while giving birth, which included the normal use of a medical vacuum or by taking certain prescribed medications while she was pregnant with Child, and (b) that Child's circumcision history could have caused his injuries; (2) Child's potential medical and genetic causes; and (3) Child's potential historical, environmental, and behavioral causes, such as falling from a bed or couch or self-inflicting the injuries. **See** N.T. Dependency Hearing, 12/19/24, at 10-36. Doctor Atkinson found that inflicted abusive head trauma, from shaking and/or impact—historically referred to as Shaken Baby Syndrome—was the only plausible and likeliest cause of Child's brain injuries, **see id.** at 16, 25, and found that abusive direct blunt force trauma, like pulling and twisting, was the only viable potential cause of Child's penis injury. **See** Report of Norell Atkinson, M.D. (Exhibit DHS-1), 6/20/24, at 37. As to the timing of Child's brain injury, Dr. Atkinson explained that the type of brain injury that Child suffered generally presents with symptoms relatively immediately and thus she pinpointed the timing of the injury to be between when Child awoke that morning and the moments before Child started behaving abnormally a few hours later. **See** N.T. Dependency Hearing, 12/19/24, at 17. Doctor Atkinson could not opine as to the timing of Child's penis injury. **See id.** at 23.

abuse. DHS timely appealed; both DHS and the court have complied with Pennsylvania Rule of Appellate Procedure 1925.[3]

On appeal, DHS presents the following issues for our review:

1. Did the trial court err as a matter of law and abuse its discretion when it failed to apply the 23 Pa.C.S. § 6381(d) evidentiary presumption to find child abuse against Father where DHS presented uncontroverted medical evidence that established, by clear and convincing evidence, that one-month-old [Child] suffered child abuse, or abusive-type injuries, of such a nature as would not ordinarily be sustained or exist except by reason of the acts or omissions of his parent or caretaker; where Father was [Child]'s parent and primary caregiver at the time he sustained the unexplained injuries; and where Father did not offer any countervailing, competent evidence subject to cross-examination to rebut the presumption that he was responsible for the abuse?

2. Did the trial court err as a matter of law and abuse its discretion when it failed to find aggravated circumstances under 42 Pa.C.S. § 6302(2)[,] where DHS presented uncontroverted, clear[,] and convincing evidence that [Child] suffered unexplained injuries to his brain and penis that were the result of inflicted trauma which constituted physical abuse resulting in serious bodily injury?

Appellant's Brief, at 3.

In DHS's first claim, it argues that the trial court committed reversible error or abused its discretion when it failed to apply the statutory presumption located in Section 6381(d). *See* 23 Pa.C.S. § 6381(d). DHS further argues that Father failed to provide any countervailing evidence at the dependency

_____

[3] In its Rule 1925(a) opinion, the court urges that this Court should reverse its abuse determination because, in its evaluation, Father **did** commit child abuse against Child. In any event, DHS appeals from the court's determination that there was no child abuse.

hearing after the burden shifted to him, pursuant to the burden-shifting scheme of Section 6381(d). Accordingly, DHS argues that it met its burden of establishing child abuse by clear and convincing evidence and, thus, the court's determination that there was no abuse should be reversed.

Father responds that the court was within its right, as the trier of fact, to find that DHS did not meet its burden of providing clear and convincing evidence that Father abused Child. Specifically, Father relies on the fact that Dr. Atkinson testified that she could not speak to the intent of the perpetrator who caused Child's injuries and stated she was unsure whether Mother's ingestion of drugs while pregnant with Child might have caused the injuries. Further, Father points to the fact that Dr. Atkinson was supposedly unfamiliar with Child's medical records from his birth to his presentation at the hospital. Moreover, Father relies on the fact that the court noted on the record its familiarity with Child's mother's circumstances insofar as the judge oversaw Child's mother's dependency case. For the reasons stated below, we find the court erroneously failed to apply the Section 6381(d) presumption and conclude there was insufficient record evidence to rebut the presumption, which established a *prima facie* case that Father abused Child. Thus, DHS is entitled to the relief it seeks.

Our standard of review in an appeal from an order of the dependency court is for an abuse of discretion. **See In the Interest of G.R.**, 282 A.3d 376, 380 (Pa. Super. 2022). "The standard of review in dependency cases 'requires an appellate court to accept the findings of fact and credibility

determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law.'" ***Id.*** (citing ***In the Interest of L.Z.***, 111 A.3d 1164, 1174 (Pa. 2015)). Claims requiring this Court to interpret statutes present questions of law for which the standard of review is *de novo*, and the scope of review is plenary. ***See Interest of K.P.***, 199 A.3d 899, 901 (Pa. Super. 2018).

> Although dependency proceedings are governed by the Juvenile Act (Act),[4] the Child Protective Services Law (CPSL)[5] controls determinations regarding findings of child abuse, which the juvenile courts must find by clear and convincing evidence. The CPSL does not provide for legal determinations of abuse; it is mainly a vehicle for reporting abuse and bringing quickly into play those services (including court hearings) available through county protective service facilities for the care of the child. The Act and the CPSL must be applied together in the resolution of child abuse complaints under the CPSL and reference must be made to the definition sections of both the Act and the CPSL to determine how that finding of child abuse is interrelated.
>
> As part of a dependency adjudication, a court may find a parent or caregiver to be the perpetrator of child abuse as defined by the CPSL. Section 6381 of the CPSL, which governs evidence in court proceedings, states that "in addition to the rules of evidence relating to juvenile matters, the rules of evidence in this section shall govern in child abuse proceedings in court." 23 Pa.C.S.[] § 6381(a). Specifically, [S]ection 6381(d) "provides for an 'attenuated' standard of evidence in making a legal determination as to the abuser in child abuse cases where a child has suffered serious physical injury as would ordinarily not be sustained or exist except by reason of the **acts or omissions** of the parent or

---

[4] 42 Pa.C.S. §§ 6301-6475.

[5] 23 Pa.C.S. §§ 6301-6387.

other person responsible for the welfare of the child." 23 Pa.C.S.[] § 6381(d).

\* \* \*

The requisite standard of proof for a finding of child abuse pursuant to [S]ection 6303(b.1) of the CPSL is clear and convincing evidence. *A petitioning party must demonstrate the existence of child abuse by the clear and convincing evidence standard* applicable to most dependency determinations, 42 Pa.C.S.[] § 6341(c). Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. However, *in certain situations, the identity of the abuser need only be established through prima facie evidence.* [. . .]

**G.R.**, 282 A.3d 380-81 (some citations and quotation marks omitted; all brackets, ellipses, and footnotes omitted; emphasis in bold in original, emphases in italics added).

The evidentiary presumption located within Section 6381(d) provides as follows:

Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S. § 6381(d). We have previously explained the burden-shifting scheme set forth within Section 6381(d) as follows:

Section 6381(d) of the CPSL establishes a rebuttable, evidentiary presumption when a child sustains abuse not ordinarily suffered absent acts or omissions of a parent or other responsible party. Under such circumstances, the fact of abuse suffices to establish *prima facie* evidence of abuse *by the parent or person responsible*.

Under [S]ection 6381(d), a parent or other responsible caregiver *may rebut the prima facie presumption with evidence*:

- 7 -

demonstrating that the parent or responsible person did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. *The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the prima facie evidence presented by DHS and the rebuttal of the parent or responsible person.*

\* \* \*

*Prima facie* evidence is not the standard that establishes the child has been abused. Rather, the fact of child abuse must be proven by clear and convincing evidence.

**G.R.**, 282 A.3d 381-82 (citations, quotation marks, brackets, ellipses, and footnote omitted; emphases added).

Also, we observe that "a parent can be a perpetrator of child abuse through omission, given that a parent has a duty not merely to refrain from harming a child, but also a duty to protect a child from others who may inflict harm." **L.Z.**, 111 A.3d at 1171.

In **In the Interest of S.A.S.**, 305 A.3d 1039 (Pa. Super. 2023), this Court remanded to the trial court for entry of a finding of child abuse by the parents. In that case, we concluded that the parents failed to meet their burden—to establish any alternate cause of their child's injuries—pursuant to the Section 6381(d) burden-shifting scheme once DHS proved a *prima facie* case of child abuse. Specifically, the parents did not offer any evidence at the dependency hearing to support their theories of the causes of their child's injuries, and no other record support for their theories existed. **See S.A.S.**, 305 A.3d at 1054-55. Thus, we found that the record only supported the

conclusion that the parents abused their child, applying the Section 6381(d) evidentiary presumption, which required entry of a finding of abuse of the child by the parents. ***See id.***

After our review of the instant record, we conclude that DHS met its Section 6381(d) burden of establishing a *prima facie* case of Child's abuse by Father by clear and convincing evidence. Specifically, Dr. Atkinson testified Child's brain and penis injuries were non-accidental, not self-inflicted, and not the result of any medical or genetic disorders. Further, Dr. Atkinson opined that Child's injuries were the type as would ordinarily not be sustained or exist except by reason of the acts or omissions of those responsible for Child's welfare—the only plausible cause of Child's head injury was inflicted abusive head trauma from shaking and/or impact and the only plausible cause of his penis injury was abusive direct blunt force trauma, like pulling and twisting. ***See*** N.T. Dependency Hearing, 12/19/24, at 16, 25; Report of Norell Atkinson, M.D. (Exhibit DHS-1), 6/20/24, at 37; ***see also*** 23 Pa.C.S. § 6381(d). Further, Dr. Atkinson opined that, based on the type of brain injury Child sustained, that injury occurred while Child was in Father's care because Child would immediately begin showing signs or symptoms of the injury, and Child was in fine health at 7 a.m. but started showing symptoms that morning, prior to when Father left Child in Paternal Grandmother's care.

Also, contrary to Father's claims, it is of no moment, on this record, that other adults lived in the house at the time Child sustained his injuries— Father's failure to protect Child from inflicted trauma established Father's

responsibility by clear and convincing evidence. *See* 23 Pa.C.S. § 6381(d); *L.Z.*, 111 A.3d at 1171 (finding Section 6381(d) presumption applicable, especially in "child abuse cases [that] involve an apparent conspiracy of silence, where all the parents and caregivers refuse to explain who was responsible for the child at the exact moment of injury") (citation and quotation marks omitted); *In the Matter of A.H.*, 763 A.2d 873, 876 (Pa. Super. 2000) (finding evidentiary presumption that parent perpetrated child's abuse applies where child's injuries could not have occurred except by parent's acts or omissions). Moreover, we observe that, at the hearing, Dr. Atkinson testified that all of Father's explanations were implausible, and she ruled them out for various reasons. On this point, and critically, we note that Father failed to present *any* rebuttal evidence when the burden shifted to him to provide an explanation, and he only now points to explanations already ruled out by Dr. Atkinson. *See In re S.L.*, 202 A.3d 723, 728 (Pa. Super. 2019) (Section 6381(d) presumption "can be rebutted, like other statutory presumptions, with countervailing competent, substantial evidence") (citations omitted); *see also S.A.S.*, 305 A.3d at 1053-55 (remanding for entry of finding of abuse of child by parents where *prima facie* case of child abuse not rebutted because parents failed to offer any evidence to support their theories of cause(s) of their child's injuries and no other record support for those theories existed). Accordingly, on this record, there is no evidence rebutting the *prima facie* presumption of Father's abuse of Child established by clear and convincing evidence. Therefore, we conclude that the juvenile court erred

in failing to apply the Section 6381(d) presumption. *See* 23 Pa.C.S. § 6381(d). Thus, we must remand to the trial court for entry of an order finding abuse. *See S.A.S.*, 305 A.3d at 1053-55.

Insofar as Father claims that Dr. Atkinson testified that she could not speak to the intent of the perpetrator who caused Child's injuries, we observe that intent is not at issue since Father has a duty to protect Child and not merely a duty to abstain from inflicting abuse. *See In re R.P. v. L.P.*, 957 A.2d 1205, 1212 (Pa. Super. 2008) (parent can be found perpetrator of child abuse through omission because parent has duty to protect child from others who may inflict harm); *see also L.Z.*, 111 A.3d at 1171 (finding Section 6381(d) presumption applicable where all parents and caregivers fail to offer plausible explanations for child's injury). To the extent Father argues that Dr. Atkinson was unsure whether Mother's ingestion of drugs while pregnant with Child might have caused Child's injuries, Father misrepresents the record, especially where Dr. Atkinson specifically ruled that theory out. *See* N.T. Dependency Hearing, 12/19/24, at 32 ("[A]n obstetrician would not have a mother on medication that would do anything to harm the baby."). Also, contrary to Father's claims, Dr. Atkinson was not unfamiliar with Child's medical records from the time of his birth to his presentation at the hospital, where Dr. Atkinson specifically testified that she and her team reviewed records from the Child's birth, which occurred merely 4 weeks prior to his presentment at the hospital. *See id.* at 27 ("[Child] had a normal newborn metabolic screen."); *id.* ("[At the time of Dr. Atkinson's evaluation of Child at

the hospital, there was n]o pertinent past medical history[,] surgical history[, or] family history.").  Inasmuch as Father argues that the court could rely on its familiarity with Child's mother's circumstances to find no abuse, there was no record evidence of what those circumstances are and how they might rebut the presumption that Father abused Child.  **See Hrinkevich v. Hrinkevich**, 676 A.2d 237, 240 (Pa. Super. 1996) ("For purposes of appellate review, what is not of record does not exist.").  Accordingly, we conclude that DHS is entitled to the relief it seeks, and we remand for entry of a finding that Father abused Child.  **See S.A.S.**, 305 A.3d at 1053-55 (remanding for entry of finding of child abuse where child's parents failed to meet burden to establish alternate cause of injury once DHS made out *prima facie* case).

In its second issue on appeal, DHS argues that the court failed to find aggravated circumstances under 42 Pa.C.S. § 6302(2) where DHS presented clear and convincing evidence that Child suffered abuse resulting in serious bodily injury insofar as Child was intubated at the hospital to save his life.

The phrase "aggravated circumstances" is defined by the Juvenile Act, and, such circumstances exist where, *inter alia*, "[t]he child [. . .] has been the victim of physical abuse resulting in serious bodily injury[. . .] by the parent."  42 Pa.C.S. § 6302(2).  "Serious bodily injury" is further defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ."  42 Pa.C.S. § 6302.

A court "need not find the existence of aggravated circumstances as to a particular party; rather, it merely must determine whether they are present in the case." *In the Interest of L.V.*, 127 A.3d 831, 838 (Pa. Super. 2015) (citation and quotation marks omitted).

After a finding of aggravated circumstances is made, the focus is directed "away from any parental rights and toward the protection of these innocent, scarred children, who have been subjected to egregious horrors that shake the very foundations of the precious family institution." *R.P.*, 957 A.2d at 1219 (citation and quotation marks omitted). If a court finds "from clear and convincing evidence that aggravated circumstances exist, the [trial] court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made[.]" 42 Pa.C.S. § 6341(c.1).

Here, it is undisputed that Child was intubated at the hospital as a result of his brain injuries and that, without intubation, Child could have died. *See* N.T. Dependency Hearing, 12/19/24, at 36 (Doctor Atkinson testifying Child required intubation because he could not breathe on his own and could have died). This satisfies the definition of "serious bodily injury," insofar as Child's brain injury created a substantial risk of death where he could not breathe on his own due to that injury. *See* 42 Pa.C.S. § 6302. Accordingly, DHS is entitled to relief on this issue as well.

In sum, upon remand, the trial court shall enter an order finding that there was clear and convincing record evidence of both Father's abuse of Child and aggravated circumstances as it relates to that abuse.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/22/2025